United States District Court
Southern District of Texas
**ENTERED**
April 26, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|   |   |
|---|---|
| Arlena Steadman, <br><br> *Plaintiff,* <br><br> v. <br><br> Kilolo Kijakazi, Acting Commissioner of Social Security Administration, <br><br> *Defendant.* | § § § § § § § § § § § § § Case No. 4:21-cv-03627 |

# MEMORANDUM AND ORDER

This is an appeal from an administrative ruling that denied Plaintiff Arlena Steadman's request for social security benefits, which was transferred to the undersigned judge upon consent of the parties. Dkt. 11. Defendant Kilolo Kijakazi filed a motion for summary judgment (Dkt. 19), to which Steadman did not respond. Defendant then amended its motion and supporting memorandum. Dkt. 21, 22. Steadman did not respond to that motion either. After carefully considering the briefs, the administrative record, and the applicable law, the Court concludes that Defendant's amended motion for summary judgment (Dkt. 21) should be granted.

## Background

Steadman filed for supplemental security income on September 13, 2019, claiming a disability onset date of June 6, 2019.[1] R.11. She claimed to suffer from epilepsy, chronic anemia, bipolar disorder, schizophrenia, depression, and a shoulder and heart problem. R.743. Her claim was denied initially and upon reconsideration. R.11. She requested a hearing before an ALJ, which was scheduled for December 3, 2020. *Id.* The hearing was rescheduled because she was unable to appear due her incarceration. *Id.*; R.460-63.

The hearing eventually took place on February 11, 2021. R.465-88. Steadman appeared to testify, represented by counsel, as did a vocational expert. Steadman testified about her limited educational background and her previous employment as a security guard and home health provider. R.471-72. She claimed that she could no longer work because of both mental and physical issues. With respect to her physical issues, Steadman described her seizure disorder, congestive heart failure, and chronic arm pain in her left arm. R.473. She reported having seizures two to three times a month and swelling in her extremities due to heart failure. R.474.

Regarding her mental issues, Steadman testified that her "attitude" was

---

[1] The administrative record, available at Dkt. 13, is referenced by the bates number printed on the lower righthand corner of each page.

affected by her bipolar disorder and schizophrenia. *Id.* Steadman's attorney questioned her about the impact of her drug use on her criminal record and her mental hospitalizations. R.475-77. Steadman admitted to having a history of drug abuse but testified that she had been sober for six months and had been compliant with medication and medical appointments. R.474, 477. She nevertheless testified that she could not work a regular job because she could not tolerate "the atmosphere of being around people." R.480. She claimed that she required constant bathroom breaks and that her godmother helped her prepare food, dress herself, and shower. R.480-81.

On March 4, 2021, the ALJ issued an opinion finding Steadman not disabled. R.11-23. The ALJ found that Steadman suffered from the severe impairments of polysubstance abuse disorder, seizure disorder, disorder of the left shoulder, peripheral neuropathy, an episode of congestive heart failure with some residual effects, high blood pressure, obesity, anxiety disorder, and mood disorder pursuant to 20 CFR § 404.1520(c). R.14. At step three, the ALJ found that her mental impairments met or medically equaled listed impairments 12.04 and 12.06 in 20 CFR Pt. 404, Subpt. P, Appendix 1. R.15-17. These listed impairments are, respectively, depressive, bipolar and related disorders (§ 12.04) and anxiety and obsessive-compulsive disorders (§ 12.06). 20 C.F.R. Pt. 404, Subpt. P, App'x 1 §§ 12.04, 12.06.

But in finding that Steadman was presumptively disabled, the ALJ found that Steadman's drug use was a material factor and that, "[i]f the claimant stopped the substance use, she would not have an impairment or combination of impairments that meets or medically equals" listing 12.04 or 12.06. R.17. The ALJ therefore analyzed whether Steadman would be able to perform work available in the national economy but-for her drug use, pursuant to 20 C.F.R. § 416.935(a). The ALJ found that, absent drug use, Steadman would no longer meet or medically equal listings 12.04 or 12.06. R.17-18.

The ALJ then proceeded with steps three to five of the analysis, considering Steadman's abilities if she avoided substance use. He determined that Steadman had the following residual functional capacity (RFC):

> [I]f the claimant stopped the substance use, she would have the residual functional capacity to: lift, carry, push, or pull twenty pounds occasionally and ten pounds frequently; stand or walk six hours in an eight-hour workday with normal breaks; and sit six hours in an eight-hour workday with normal breaks. The work is limited to understanding, remembering, and carrying out one, two, or three-step routine tasks performed at a non-forced, non-assembly line pace. Additionally, with [sic] work is limited to minimal contact with the general public, defined as less than five-percent of the workday. Further, the work is limited to occasional contact with co-workers with only occasional changes in the work setting. As well, the work may not be at unprotected heights or elevations and may not be in proximity to dangerous equipment, including driving.

4

R.19. Given this RFC, the ALJ found that Steadman could not perform her past relevant work as a security guard, but that she could adapt to jobs that were available in the national economy. R.22-23. The ALJ then relied on the testimony of a vocational expert to conclude that Steadman could still perform light, unskilled jobs such as garment sorter or laundry worker. R.23.

Steadman unsuccessfully appealed the ALJ's decision to the Social Security Administration's Appeals Council, R.1-4, which rendered the ALJ's decision ripe for this Court's review. *See* 42 U.S.C. § 405(g); *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000) ("[Social Security Administration] regulations provide that, if ... the [Appeals] Council denies the request for review, the ALJ's opinion becomes the final decision.").

## Standard of Review

A reviewing court assesses the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (internal quotation marks omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is

"more than a scintilla, but it need not be a preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)).

When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). But judicial review must not be "so obsequious as to be meaningless." *Brown*, 192 F.3d at 496 (quotations omitted). The court must scrutinize the record as a whole, including whatever fairly detracts from the weight of evidence supporting the Commissioner's findings. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

## Analysis

### I. Legal Framework

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is ... disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing

6

any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)) (footnote omitted). Before moving from step three to four, the ALJ determines the claimant's residual functional capacity, which is used to evaluate steps four and five. *Id.* at 776 n.2 (quoting 20 C.F.R. § 404.1520(a)(4)).

"Under this five-step approach, if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process stops ...." *Id.* at 776 (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof at the first four steps. *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017). At the fifth step, the burden of proof shifts to the Commissioner "to establish the existence of other available substantial gainful employment that a claimant can perform." *Id.* at 753-54.

## II. <u>Steadman failed to prosecute her appeal.</u>

On March 17, 2023, the Court issued a show cause order, cautioning Steadman that her appeal could be dismissed if she did not explain why she had taken no action. Dkt. 17. Despite this warning—and despite the long-expired November 11, 2022 summary judgment deadline—Steadman has not filed any statement or motion on her behalf. This inaction alone merits dismissal under Fed. R. Civ. P. 41(b). *See Hardwick v. Colvin*, 2016 WL 6770792, at *1 (N.D. Tex. Mar. 14, 2016) (failure to file briefing or show good

7

cause merited involuntary dismissal), *report and recommendation adopted*, 2016 WL 6693638 (N.D. Tex. Mar. 30, 2016); *Jackson v. Soc. Sec. Admin.*, 2013 WL 12100776, at *1 (N.D. Tex. Sept. 3, 2013) (claimant's failure to comply with scheduling order justified *sua sponte* dismissal under Fed. R. Civ. P. 41(b)), *report and recommendation adopted*, 2013 WL 12100777 (N.D. Tex. Sept. 23, 2013).

Nevertheless, out of an abundance of caution, the Court will consider the underlying ALJ decision and Defendant's motion. *See, e.g.*, *Tate v. Kijakazi*, 2022 WL 956180, at *1 (S.D. Tex. Mar. 30, 2022) (adopting the recommendation of the magistrate judge who analyzed the underlying decision and considered defendant's motion even though claimant failed to file a cross-motion or respond to the Commissioner's motion); *Madrigal v. Kijakazi*, 2021 WL 5639617, at *1 (S.D. Tex. Nov. 30, 2021) (same); *Welch-Taylor v. Colvin*, 2016 WL 7742797, at *1 n.1 (S.D. Tex. Aug. 12, 2016) (analyzing the ALJ's decision and defendant's motion despite claimant's failure to move for summary judgment or otherwise show cause that her appeal should not be dismissed for want of prosecution).

### III. The ALJ's decision should be affirmed.

#### A. The ALJ applied the appropriate legal standard.

There is a "three-step evaluation process employed to determine whether

benefits are available when drug or alcohol addiction is at issue …: '(1) does the claimant meet the disability standard? (2) is there medical evidence of drug addiction or alcoholism? (3) is the claimant's substance use or addiction disorder 'material' to the determination.'" *Pena v. Acting*, 2014 WL 12540442, at *3 (S.D. Tex. June 12, 2014) (quoting *Oettinger v. Barnhart*, 2002 WL 31422308, at *5 (W.D. Tex. Sept. 4, 2002)).

The ALJ appropriately followed this process to account for Steadman's polysubstance use. Considering all of Steadman's mental and physical impairments (including polysubstance use), the ALJ determined Steadman was disabled because she met the listings for 12.04 and 12.06. R.15-17. Given the prima facie finding of disability, the ALJ then considered the effect of Steadman's drug abuse issue on her functional capacities. *Pena*, 2014 WL 12540442, at *3 (drug and alcohol abuse "becomes an issue in a social security claim for benefits only after the ALJ finds the claimant disabled"). The ALJ subsequently determined that her "drug addiction or alcoholism is a contributing factor material to the determination of disability" pursuant to 20 C.F.R. § 416.935, rendering Steadman unable to meet the definition of disability. R.23; *see also Pena*, 2014 WL 12540442, at *3 (referencing SS-13-2P for the principle that drug use "is material to the determination of disability, and renders benefits unavailable, if the claimant would not meet the

9

definition of disability if he or she were not using drugs or alcohol"). In making that determination, the ALJ weighed "[t]he key factor … in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability," which is "whether [claimant would be] disabled if [claimant] stopped using drugs or alcohol." 20 C.F.R. § 416.935(b)(1).

Without the presumptive disability determination, the ALJ proceeded through the full five-step analysis, considering Steadman's functional capacities if she were to refrain from substance use. As explained below, his findings were supported by substantial evidence.

### B. The ALJ supported his determination with substantial evidence.

#### 1. The ALJ's step-three analysis

First, substantial evidence supported the ALJ's finding that Steadman's drug use was material to her ability to meet listings 12.04 and 12.06. Steadman acknowledged her drug use and recent sobriety at the hearing, R.474-77, and the ALJ described a series of treatment and hospital notes reflecting the impact of Steadman's substance use. *See* R.16 (referencing, *inter alia*, Steadman's PCP use leading up to her seventh involuntary psychiatric in-patient hospitalization in October 2020 (R.1863), and Steadman's positive drug screens for PCP, cocaine, or both in 2013, 2018, and 2019 (R.950, 1459, 1663)). The ALJ observed that, while abusing PCP, Steadman "becomes

10

hostile and violent ...." R.16 (referencing Steadman's screaming during her August 2019 hospitalization (R.1573-74) and her irritability and "anger dyscontrol" during an October 2020 hospitalization (R.1863)). He also observed that Steadman "showed severe difficulty focusing" and experienced "hallucinations and extreme, severe symptoms." *Id.* (referencing, among other records, a September 2020 emergency room visit where Steadman reported high stress, suicidal thoughts, and seizures, but decompensated into "an episode of shaking in which she was also screaming" once treated (R.1735)). As Steadman failed to prosecute her appeal, she did not attempt to meet her burden of providing evidence that her drug addiction was not a contributing factor to her disability. *See Brown*, 192 F.3d at 498 (claimant bears the burden of proving the immateriality of her drug use on her impairments).

In contrast, Steadman testified that she had been sober for six months and had become compliant with her appointments and medications. R.474, 477. The consultative examiners also evaluated Steadman and opined that, without drug use, Steadman had only moderate limitations in each of the paragraph B criteria for listings 12.04 and 12.06. R.18. In addition to relying on the examiner's report, ALJ noted that Steadman had non-severe memory impairment during a January 2021 appointment while sober (R.3346); that she was "cooperative and able to interact without substance abuse" (R.1656); that

11

she was observed to be attentive at appointments from 2019 to 2021 (R.1448, 1461, 1646, 1670; 3346); and that she was able to navigate the bus system (R.1656). The ALJ therefore determined that Steadman would not meet listings 12.04 or 12.06 without the symptoms arising out of drug use, because she had only moderate limitations in each of the paragraph B functional categories. *Id*. As a result, Steadman would not be presumptively disabled if she refrained from drug use. Accordingly, the ALJ's determinations that Steadman's drug use was material and that she would not have met the criteria of listings 12.04 and 12.06 were supported by substantial evidence.

### 2. The ALJ's RFC determination

Because Steadman was not presumptively disabled without incorporating the symptoms of her drug use, the ALJ proceeded to formulate her RFC and proceed to steps four and five of his analysis. That RFC determination was supported by myriad citations to the record, including medical evidence about Steadman's capabilities without substance use and about the physical impairments Steadman highlighted during the hearing.

For example, Steadman complained of chronic left arm pain, but was able to move all her extremities without swelling or tenderness in September 2020. R.1735. And in January 2021, EMG testing showed normal results for her left arm, and the provider concluded that her sensory conduction studies

and motor conduction studies were normal. R.3363. Regarding her heart issues, the ALJ pointed to numerous records, including normal results from an EEG and echocardiogram in July 2019. *See* R.20 (citing R.1085).

The ALJ also referenced medical records reflecting Steadman's mental condition when she was not reported to be using drugs. *Id.* In March 2020, Steadman appeared for a psychological consultative examination and had not used drugs in several months. R.1656-60. Although she had below average cognitive function, she was able to perform simple math. R.1558-59. In May 2020, Steadman's mental status was clinically stable. R.1667. And in January 2021, during the six-month period that Steadman claimed to be drug-free, Steadman's clinical evaluation showed that her mental status had improved. R.3344. These and many other records cited by the ALJ confirm that substantial evidence supports the RFC determination.

### 3. The ALJ's step-four and step-five determinations

At step four, the ALJ determined that Steadman could no longer perform her past work as a security guard because the vocational expert described that job as "light and semiskilled with a specific vocational preparation." R.22. Nevertheless, at step five, the ALJ relied on the expert's testimony to determine that light, unskilled jobs such as garment sorter and laundry worker were available to Steadman in the national economy. *Id.*; R.484-85 (ALJ's

13

hypothetical questions to the vocational expert).

Because the ALJ is entitled to rely on the vocational expert's testimony as evidence of Steadman's ability to do certain jobs, the ALJ supported his step-five determination with substantial evidence. 20 C.F.R. § 404.1566(e) ("If the issue in determining whether [a claimant is] disabled in whether [his or her] work skills can be used in other work and the specific occupations in which they can be used … [the Commissioner] may use the services of a vocational expert or other specialist.").

Accordingly, the ALJ properly applied the law and supported his decision with substantial evidence. His opinion should be affirmed.

## Conclusion

The Court finds that the ALJ's RFC determination was supported by the record. Accordingly, the Court **GRANTS** Defendant's Amended Motion for Summary Judgment (Dkt. 21). It is therefore **ORDERED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

Signed on April 26, 2023 at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge